ERROL ATKINS *v.* BRIDGEPORT HYDRAULIC COMPANY
(3608)

SPALLONE, DALY and BIELUCH, Js.

Argued October 9—decision released December 24, 1985

*Ernest C. LaFollette,* for the appellant (plaintiff).

*Paul E. Knag,* with whom was *Gregory B. Nokes,* for the appellee (defendant).

DALY, J. This appeal arises from an action claiming wrongful termination of employment under common law and under the Fair Employment Practices Act, General Statutes § 46a-60 (a) (4). The plaintiff, Errol Atkins, instituted a two count complaint against the defendant, Bridgeport Hydraulic Company, alleging wrongful discharge from employment and seeking rein-

statement and damages. From the granting of the defendant's motion for summary judgment, the plaintiff has appealed.

The facts are not in dispute. The plaintiff had been employed by the defendant from November, 1971, until January 28, 1983. The plaintiff lodged three complaints with the Commission on Human Rights and Opportunities (CHRO). The first complaint, filed on August 17, 1982, claimed that he had been denied a promotion due to his race. The second, filed on September 1, 1982, alleged that he received a disciplinary suspension because of his race and because he had initiated the first complaint. The third, filed subsequent to the termination of his employment, on February 1, 1983, claimed that his discharge was retaliatory and racially motivated.

On September 7, 1983, the CHRO dismissed all three complaints as being unsupported by the evidence. A request for reconsideration was denied by letter dated September 30, 1983, which noted that the time period applicable to an appeal was thirty days for service upon the parties. The plaintiff let the time limit pass and served the defendant with notice on the thirty-first day, Monday, October 31, 1983. The CHRO, although not named as a party, was provided with a copy of the action against the defendant.

The trial court, in rendering summary judgment for the defendant, found that the plaintiff had failed to follow the statutory route of appeal, and that the independent action was not an appeal and was therefore improper. In his appeal to this court, the plaintiff claims that the trial court incorrectly concluded from the dismissals by the CHRO that this action was not an appeal, and that the plaintiff could not bring a separate and independent action.

The plaintiff contends that the present action constitutes an appeal to a court from a decision by an administrative agency. In the sense of transferring jurisdiction from one court to another, however, this is not an "appeal" but merely "a process, under the misleading name of appeal, for invoking the judicial power to determine a legal injury complained of, or the legality of an act done by the officers of another department." (Citations omitted.) *Sheehan* v. *Zoning Commission,* 173 Conn. 408, 411, 378 A.2d 519 (1977), quoting *Malmo's Appeal,* 72 Conn. 1, 6, 43 A. 485 (1899). While purportedly challenging the action of the CHRO in dismissing his complaints, the plaintiff has proceeded against the defendant seeking to compel reinstatement and the award of monetary damages.

Even if we assume arguendo that the plaintiff has filed an appeal, General Statutes § 4-183 (b) provides in pertinent part: "Copies of the petition shall be served upon the agency and all parties of record . . . within thirty days after mailing of the notice of the decision thereon, except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford." The plaintiff failed to serve process timely or properly within the proscriptions of the statute.

"Without a citation signed by competent authority, the officer to whom it is given for service receives no power or authority to execute its command, and becomes 'little more than a deliveryman.' " *Sheehan* v. *Zoning Commission,* supra, 413; *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* 148 Conn. 336, 339, 170 A.2d 732 (1961). "The citation is a matter separate and distinct from the sheriff's return and is the important legal fact upon which the judg-

ment rests. . . . A proper citation is essential to the validity of the appeal and the jurisdiction of the court." (Citations omitted.) *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* supra. The purpose of General Statutes § 4-183 (b) is not to obviate the need for a citation, but rather to permit service upon the administrative agency in a manner different from ordinary civil actions, that is, by registered or certified mail.

Appeals to courts from administrative agencies may only be brought under statutory authority and only by strict compliance with the statutory provisions by which they are allowed. *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 587, 418 A.2d 939 (1979); *Newtown* v. *Department of Public Utility Control,* 3 Conn. App. 416, 488 A.2d 1286 (1985); *Board of Education* v. *State Board of Education,* 38 Conn. Sup. 712, 717, 461 A.2d 997 (1983). Statutory time provisions which specify when an appeal must be taken are designed to facilitate a speedy determination of the case. The element of time represents not merely a procedural limitation but is an essential part of the remedy. "Such provisions are mandatory, and, if not complied with, render the appeal subject to [dismissal]." (Citations omitted.) *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 6, 363 A.2d 1386 (1975).

Where the last day to appeal fell on Sunday, as was the case here, service of process on the following day did not satisfy the statutory requirements. *Souza* v. *Great Atlantic & Pacific Tea Co.,* 25 Conn. Sup. 174, 176, 199 A.2d 170 (1964). Furthermore, restrictions on the service of process on Sundays were abolished upon the repealing of General Statutes § 52-71 by Public Acts 1976, No. 76-415, § 9.

The process of filing a complaint based on a discriminatory practice is clearly outlined in General Statutes § 46a-83 (a) which provides in pertinent part that

"after the filing of any discriminatory practice complaint, the chairman of the commission shall refer the same to a commissioner or investigator to investigate and if . . . [he] determines . . . that there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint, he shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion."

If these informal procedures are unsuccessful, the CHRO must certify the complaint, hold a hearing and order appropriate relief. General Statutes §§ 46a-84, 46a-86. Thereafter, any party aggrieved by a final order of the CHRO may appeal to the Superior Court. General Statutes § 46a-95 (j). Under the discriminatory practice statutes, the CHRO is charged "with initial responsibility for the investigation and adjudication of claims of employment discrimination. That the act does not provide an unconditional private right of action for claimants like the plaintiff is underscored by the terms of General Statutes § 46a-99, which expressly provides such a direct right of action when the allegedly discriminatory employer is a state agency." *Sullivan* v. *Board of Police Commissioners,* 196 Conn. 208, 216, 491 A.2d 1096 (1985). "Because the plaintiff failed to follow the administrative route prescribed by the legislature for his claim of discrimination, he lacks the statutory authority to pursue that claim in the Superior Court." *Osborn* v. *Rocklen Automotive Parts & Service, Inc.,* 4 Conn. App. 423, 425, 494 A.2d 622 (1985).

"The plaintiff had available to him administrative remedies that could have afforded him meaningful relief under the statutes that govern his claim of discrimination. His failure to exhaust his appellate review procedures after bringing his complaint to the CHRO forecloses his access to judicial relief, because it

deprived the trial court of jurisdiction to hear his complaint." Id., 425–26; *Sullivan* v. *Board of Police Commissioners,* supra, 217–18.

Count two alleges that, in terminating the plaintiff, the defendant violated Connecticut's public policy regarding employment practices. A cause of action for wrongful discharge is only recognized where public policy is clearly contravened. *Sheets,* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 475, 427 A.2d 385 (1980). "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." *Wehr* v. *Burroughs Corporation,* 438 F. Sup. 1052, 1054 (E.D. Pa. 177). In *Sullivan,* the public policy against age discrimination was adequately enforceable through statutory remedies and did not warrant judicial recognition of an independent cause of action.

The trial court was correct in ruling that the plaintiff's attempt to bring an independent cause of action did not constitute an appeal and that the failure to exhaust the appellate review procedures under the Fair Employment Act deprived the trial court of jurisdiction to hear the plaintiff's claims.

There is no error.

In this opinion the other judges concurred.